## PADRICK PROPERTIES, Inc., v. MIAMI HERALD PUBLISHING CO.
### No. 2007-L.

Circuit Court, St. Lucie County.

December 8, 1959.

J. M. Sample, Fort Pierce, for plaintiff.

Earl D. Waldin, Jr., Smathers, Thompson & Dyer, Miami, and Otis R. Parker, Fee & Parker, Fort Pierce, for defendants.

D. C. SMITH, Circuit Judge.

Plaintiff sued defendant newspaper and its reporter, Doug Silver, for $100,000 damages, alleging publication of an article containing "false and defamatory matter." The article is set forth below —

### By DOUG SILVER
#### Herald Correspondent

FORT PIERCE—Two tenants who refused to go along with a landlord's efforts to secure homestead exemption on rented property said Sunday they had lost their homes.

Their disclosure came in the wake of an investigation by St. Lucie County authorities and The Herald.

The men said when they refused to be a party to the alleged tax dodge they found their rent immediately boosted $20 a month.

"There wasn't anything to do but move our families out of the homes," they said.

Meanwhile, evidence piled up that more landlords had taken advantage of a "sales agreement" and "quit-claim deed" scheme to escape county taxes.

County Tax Assessor Calvin P. Poppell told The Herald he was checking 21 "questionable" sales agreements filed Dec. 31, 1957, by Padrick Properties, Inc., of Fort Pierce.

It was from two Padrick homes that The Herald's informants said they were forced to move after refusing to sign a sales agreement and quitclaim deed at the same time, and then apply for homestead exemption on the property.

The *tax dodging device* was discovered by Poppell, who said "hundreds of thousands of dollars" may have been lost by the county in the last 10 years.

"Tenants who are just renting homes are asked by their landlords to sign sales agreements," Poppell said. "These, plus the tenants' applications for homestead exemption, mean the landlords have to pay less taxes."

The landlords using the scheme to lower their taxes also protect themselves, Poppell pointed out, by having the tenants sign "quitclaim deeds" which turn the property back to the real owners.

Poppell's discovery that many of the sales agreements and quitclaim deeds were signed the same day led to his present investigation. The deception came to light when several tenants moved out of the homes and the landlords filed the quitclaim deeds with the county.

Poppell told The Herald he didn't consider the 21 questionable agreements bona fide evidence the property really was being sold. In some cases, he said, the monthly payments specified wouldn't cover the interest requirements.

He cited an agreement between Padrick's firm and Vance Carter of 1004 Sunrise Blvd. The sales document for the $15,000 home calls for $70 monthly payments or a yearly total of $840. Poppell pointed out that the interest alone would amount to $900.

Robert Hayden, 40-year-old shop foreman for the Central Truck Lines, told The Herald he rented a home at 816 S. 6th St. from the Padricks last summer for $65 a month.

On Dec. 27, he said, he was approached by Padrick's property manager, Thomas H. Matthews, to sign a sales agreement and apply for homestead exemption. He also was to sign a quitclaim deed at the same time.

Hayden quoted Matthews as saying the procedure was "just a formality—it's only to keep from paying city and county taxes so the Padricks can fix up the property."

Hayden refused, and a week later received a letter boosting his rent $20 a month. The shop foreman said one of his neighbors, James Craig who lived at 814 S. 6th St., received the same proposition and when he turned it down, got the same rent boost.

According to Poppell, other tenants apparently have gone along with the landlord's proposal as evidenced by the sales agreements filed.

Poppell has not said what, if any, action would be taken against tenants who agree to the scheme and file for homestead exemption. A person signing an exemption application must swear he holds title or a beneficial interest in the property.

Next: Just how much has this tax dodge cost the cities and counties.

This cause came on for trial before the court without a jury. The court has heard and considered the evidence presented and argument of counsel.

The court finds from the evidence that the publication complained of, appearing in evidence as plaintiff's exhibit 1, is a qualified privileged communication concerning a subject affecting the interest of the general public, and that the statements made therein are either true or were made in good faith with an honest belief in their truth, or are fair comment, free from malice and published from good motives.

The evidence fails to show any malice on the part of the defendants or either of them towards the plaintiff. An affirmative showing of malice is essential to recovery by the plaintiff when a qualified privileged communication is involved.

The court finds for the defendants and an appropriate judgment shall be entered accordingly for them, and counsel for the defendants are instructed to prepare such a judgment, submitting copy thereof to counsel for the plaintiff and presenting the original to the court for entry.